## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

W. SCOTT GRECO,

     *Plaintiff*,

v.

ERIC QUETGLAS-JORDAN, *et al.*,

     *Defendants.*

Civ. No. 24-01035 (MAJ)

### OPINION AND ORDER

### I.    Introduction

This case presents a contractual dispute between two attorneys who previously worked as co-counsel pursuant to a split-fee arrangement. Plaintiff W. Scott Greco ("Greco" or "Plaintiff") filed this action against Eric Quetglas-Jordán and Quetglas Law Office P.S.C. (collectively "Quetglas-Jordán" or "Defendant"), alleging that Quetglas-Jordán had wrongfully withheld attorney's fees owed to Greco. (**ECF No. 1**). On November 8, 2024, Quetglas-Jordán filed an Answer to the Complaint, (**ECF No. 22 at 2–21**), along with several Counterclaims that request declaratory and equitable relief. (**ECF No. 22 at 21–32**).

On November 12, 2024, Greco filed a Motion to Dismiss the Counterclaims. (**ECF No. 23**). On December 13, 2024, Quetglas-Jordán filed a Memorandum in Opposition to Plaintiff's Motion to Dismiss, (**ECF No. 30**), and Greco filed a Reply. (**ECF No. 33**). For the reasons stated below, Plaintiff's Motion to Dismiss is **GRANTED**.

## II.    Background[1]

Greco and Quetglas-Jordán are both attorneys. (**ECF No. 22 at 2 ¶ 2, 3 ¶ 6**). According to the Counterclaim, during the events of this case, Quetglas-Jordán was engaged in a limited partnership (the "Partnership") with Luis Miñana and his law firm Espada, Miñana & Pedrosa (collectively "Miñana"). (**ECF No. 22 at 4–5 ¶¶ 11–12**). By the terms of the Partnership agreement, Miñana and Quetglas-Jordán jointly managed a series of matters subject to FINRA arbitration. (**ECF No. 22 at 4 ¶ 11**). The Partnership divided fees evenly. (**ECF No. 22 at 4 ¶ 12**).

The Partnership contracted Greco to assist with a set of FINRA arbitration claims and agreed to pay Greco one-third of any contingent fee resulting from those matters. (**ECF No. 22 at 4–5 ¶ 12**). Over the next several years, the Partnership secured multiple favorable awards through arbitration with the assistance of Greco. (**ECF No. 22 at 5 ¶ 14 – 6 ¶ 15**). Later, a series of disputes arose concerning the contingent fee awards that resulted from some of those cases: on December 21, 2020, Quetglas-Jordán filed suit

---

[1]    "District courts apply the same legal standard to motions to dismiss counterclaims pursuant to Fed. R. Civ. P. 12(b)(6) as they do when reviewing motions to dismiss a complaint." *Stonecrest Managers, Inc. v. Schreffler*, Civ. No. 22-11167, 2023 WL 11826593 (D. Mass. May 5, 2023). For the purposes of resolving this Motion, therefore, the Court treats the well-pleaded facts alleged by Quetglas-Jordán in the Counterclaim as true. *See Boit v. Gar-Tec Prod.*, Inc., 967 F.2d 671, 675 (1st Cir. 1992) ("In determining whether a prima facie showing has been made, the district court is not acting as a factfinder. It accepts properly supported proffers of evidence by a plaintiff as true."); *In re Moultonborough Hotel Grp., LLC*, 726 F.3d 1, 4 (1st Cir. 2013) (noting that the same standard applies where a counterclaim defendant moves to dismiss a counterclaim: "we assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the [counterclaim] plaintiff's stated theory of liability[.]").

Because the pleadings are closed, the Court also draws upon facts admitted in Defendant's Answer. *See* FED R. CIV. P. 12(c) (providing that, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings"); *Aponte-Torres v. Univ. of P. R.*, 445 F.3d 50, 54–55 (1st Cir. 2006) (noting the "modest difference between Rule 12(c) and Rule 12(b)(6) motions" is that a "Rule 12(c) motion . . . implicates the pleadings as a whole" and concluding that, "[b]ecause the defendants previously had answered the . . . complaint, the district court appropriately treated their motion to dismiss as one for judgment on the pleadings"); *Kando v. R.I. State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018) (noting that the standard for Rule 12(b)(6) and Rule 12(c) motions is the same: "we take the well-pleaded facts and the reasonable inferences therefrom in the light most favorable to the nonmovant"); *see also Integrand Assurance Co. v. Puma Energy Caribe, LLC*, 463 F. Supp. 3d 291, 295 (D.P.R. 2020).

against Miñana in state court, (**ECF No. 22 at 9 ¶ 26**), and on January 23, 2024, Greco filed this action against Quetglas-Jordán, alleging breach of contract, conversion, fraudulent inducement, and breach of fiduciary duty in connection with three arbitration matters on which Greco and Quetglas-Jordán worked as co-counsel. (**ECF No. 1**).

On November 8, 2024, Quetglas-Jordán filed an Answer and Counterclaim in the instant action, bringing four counterclaims against Greco. Those claims arise from two core factual allegations. First, Quetglas-Jordán alleges that Greco secretly split fees on various matters directly with Miñana, cutting Quetglas-Jordán out of a share of profits to which he was entitled. (**ECF No. 22 at 26 ¶¶ 23–24, 27 ¶¶ 29–30**). Specifically, Quetglas-Jordán alleges that the Partnership agreement required the partners to split fees in all legal actions covered by the agreement; that the cases on which Greco and Miñana secretly collaborated fell within the scope of the Partnership; and that Greco was "well and fully aware" of these facts. (**ECF No. 22 at 25 ¶ 21**). Based on these allegations, Quetglas-Jordán brings a claim for "compensatory equitable relief" to recover outstanding legal fees purportedly owed to him by Greco. (**ECF No. 22 at 30 ¶¶ 49–52**). In addition, Quetglas-Jordán seeks a declaratory judgment holding that, under the doctrine of "unclean hands," Greco may not recover any unpaid fees to which he would otherwise be entitled. (**ECF No. 22 at 29 ¶¶ 40–44**).

Second, Quetglas-Jordán theorizes that the filing of a complaint in the state court action between himself and Miñana effectively dissolved the Partnership. (**ECF No. 22 at 23 ¶ 12**). Greco continued to provide legal services on several matters after that date. (**ECF No. 22 at 25 ¶¶ 17–19**). However, Quetglas-Jordán asserts that, due to the purported dissolution of the Partnership, the contract between Greco and the Partnership was also dissolved, such that Greco now has no contractual right to claim a fee resulting

from any services tendered after December 21, 2020, the date that the state court action commenced. On this basis, Quetglas-Jordán brings two additional claims for declaratory judgment. (**ECF No. 22 at 29 ¶ 38, 30 ¶¶ 45–48**).

### III.    Analysis

### A.  Motion to Strike Defendant's Claims for Declaratory Judgment

Greco moves the Court to strike Quetglas-Jordán's claims for declaratory judgment under Rule 12(f) as redundant of his affirmative defenses. (**ECF No. 23 at 10**); FED. R. CIV. P. RULE 12(f) ("The Court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter"). The First Circuit has long recognized that "considerations of judicial expediency are relevant to jurisdictional decisions under the declaratory judgment statute . . . [and] that jurisdiction under the declaratory judgment statute is discretionary with the court[.]" *Sweetheart Plastics, Inc. v. Ill. Tool Works, Inc.*, 439 F.2d 871, 875 (1st Cir. 1971). As such, the Declaratory Judgment Act, 28 U.S.C. § 2201, "does not confer on the litigant an absolute right to be heard." *Id.* (citing *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).

Where a defendant raises a counterclaim for a declaratory judgment that is "redundant of [his] affirmative defenses" the Court may "decline to entertain such a counterclaim or may grant an opposing party's motion to strike under Fed. R. Civ. P. 12(f)[.]" *Transpac Marine, LLC v. Yachtinsure Servs., Inc.*, 655 F. Supp. 3d 18, 29 (D. Mass. 2023). Granting a Rule 12(f) motion under these circumstances is sensible because such counterclaims merely seek "resolution of legal issues that will, of necessity[,] be resolved in the course of the litigation of the other causes of action." *Id.* (quoting *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006)) (quotations omitted). For that reason, although "motions to strike are generally disfavored," where a

counterclaimant raises a claim for declaratory judgment that is wholly redundant of its affirmative defenses, striking those claims serves judicial economy by "removing unnecessary clutter from the case." *Id.* (quotations omitted); *see also Aldens, Inc. v. Packel*, 524 F.2d 38, 51–52 (3d Cir. 1975).

Each of Quetglas-Jordán's claims for declaratory relief are redundant of his defenses. The first counterclaim requests a declaratory judgment ruling that the purported dissolution of the Partnership extinguished Greco's "contractual right to claim fees in any of the arbitration claims in dispute." (**ECF No. 22 at 29 ¶ 38**). This "claim" is really a defense against the breach of contract claim brought by Greco: the request is purely defensive in nature because the only relief sought is a ruling that Greco may not prevail on his claims. Indeed, this is one of the affirmative defenses set forth in the Answer. (**ECF No. 22 at 18 ¶ 4**). Similarly, the second counterclaim requests a declaratory judgment ruling that, under the doctrine of "unclean hands," bad faith acts allegedly committed by Greco extinguished his right to legal relief. (**ECF No. 22 at 29 ¶¶ 40–44**). Yet the doctrine of "unclean hands" is a defense to an action for equitable relief, not a stand-alone claim for relief. *See, e.g., Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 488 F.3d 11, 15 (1st Cir. 2007) (explaining that "[t]he basic premise" of the unclean hands doctrine "is that when a district court considers whether or not to award equitable relief, one factor that it must consider is the extent to which the plaintiff has engaged in certain misconduct.").[2] Once more, this "claim" is also set forth as an affirmative defense in the Answer. (**ECF No. 22 at 20 ¶ 7**). Lastly, the third counterclaim requests a declaratory judgment stating that Greco "has no right to collect any fees from"

---

[2]     Additionally, Greco's claims for breach of contract, conversion, fraud, fraudulent inducement, and breach of fiduciary duty are all claims for *legal* relief. (**ECF No. 1 at 18–20**). "Unclean hands" is a defense to an action for equitable relief, yet Greco does not bring any claims for equitable relief.

a particular case on which the parties collaborated "because no gross compensation was obtained" from that case. (**ECF No. 22 at 30 ¶ 47**). This contention is also nothing more than a defense to liability against Greco's breach of contract action, and it was also included among Quetglas-Jordán's affirmative defenses. (**ECF No. 22 at 20 ¶ 11**).

Mr. Quetglas-Jordán acknowledges as much, stating that "all of the claims of the Counterclaim go to the very foundation of [Mr. Greco's] claims[.]" (**ECF No. 30 at 4**). That is an accurate description of the declaratory judgment counterclaims. Because these claims for declaratory relief are entirely redundant of Mr. Quetglas-Jordán's affirmative defenses and will of necessity be resolved by the Court in the course of adjudicating Mr. Greco's claims, these claims for declaratory relief are struck under Rule 12(f).

### B. Motion to Dismiss Defendant's Claim for "Compensatory Equitable Relief" for Failure to State a Claim for Which Relief May Be Granted

The Court now turns to Greco's request to dismiss Quetglas-Jordán's claim for "compensatory equitable relief." (**ECF No. 22 at 30 ¶¶ 49−52**). In the sole remaining claim set forth in the Counterclaim, Quetglas-Jordán alleges that Greco owes him a "quantum meruit fee share" of legal fees allegedly divided between Miñana and Greco. (**ECF No. 22 at 30 ¶ 51**). Greco moves to dismiss this claim under Federal Rule of Civil Procedure 12(b)(6), asserting that Quetglas-Jordán has failed "to state a claim upon which relief can be granted." (**ECF No. 23 at 11−12**); *see* FED. R. CIV. P. 12(b)(6)). For the reasons set forth below, that motion is **GRANTED**.

### i.      Legal Standard

To resolve a 12(b)(6) motion, federal courts follow a two-step method.[3] First, the court must "isolate and ignore statements in the [counterclaim] that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). A counterclaim need not include detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Douglas v. Hirshon*, 63 F.4th 49, 55 (1st Cir. 2023) (instructing that a district court entertaining a Rule 12(b)(6) motion need not "credit conclusory legal allegations [or] factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture"). Second, the court must take the remaining "well-[pleaded] . . . facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz*, 669 F.3d at 55 (citations and quotations omitted); *see also U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 383 (1st Cir. 2011) (stating that a 12(b)(6) motion requires the court to analyze the facts alleged in the counterclaim "in the light most hospitable to the plaintiff's theory"). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels [the court] to draw on its judicial experience and common sense.'" *Schatz*, 669 F.3d at 55 (citations and quotations omitted).

---

[3]       As previously noted, *supra* n.1, while the Court draws upon facts admitted in Defendant's Answer, the applicable legal standard is the well-pleaded complaint rule under Rule 12(b)(6). *Kando*, 880 F.3d at 58.

### ii.    Analysis

As previously noted, Quetglas-Jordán alleges that Greco secretly split fees on various matters directly with Miñana, notwithstanding Greco's knowledge that the Partnership agreement required Miñana to split the fees in those cases with Quetglas-Jordán. (**ECF No. 22 at 25 ¶ 21 − 26 ¶ 29**). Under the equitable doctrine of quantum meruit, Quetglas-Jordán seeks a remedy for his purported share of the profits in question. (**ECF No. 22 at 30 ¶ 51**).

This claim encompasses two distinct factual allegations. First, Quetglas-Jordán alleges that, during the course of the Partnership with Miñana, Miñana separately collaborated with Greco on a series of cases without involving Quetglas-Jordán in the arrangement. (**ECF No. 22 at 26 ¶ 23**). In connection with those cases, Greco paid over $300,000 in legal fees to Miñana. *Id*. According to Quetglas-Jordán, the terms of the Partnership agreement required that Miñana and Quetglas-Jordán "jointly participate" in those cases and split evenly "any fees" resulting from their work. *Id*. at 22 ¶ 6, 26 ¶ 24. Quetglas-Jordán asserts that Greco had a "good faith [duty] to disclose" to Quetglas-Jordán the existence of the agreement between Greco and Miñana and that, as a result of his failure to do so, Greco incurred an equitable obligation to pay Quetglas-Jordán a 50% share of all fees received by Miñana in connection with those cases. (**ECF No. 22 at 27 ¶ 31**); (**ECF No. 30 at 22–23**). Second, Quetglas-Jordán alleges that a series of cases jointly managed by the Partnership and Greco "produced fees" after the purported dissolution of the Partnership. (**ECF No. 22 at 27 ¶ 30**). According to Quetglas-Jordán, Miñana paid out a share of those fees to Greco, but not to Quetglas-Jordán. *Id*. Quetglas-Jordán alleges that he was entitled to a share of these fees under the terms of the Partnership agreement. *Id*. at 27 ¶ 29 − 28 ¶ 32.

A claim for quantum meruit must plausibly allege that the claimant has previously rendered services to the person from whom they seek to recover. *Blanco Matos v. Colón Mulero*, 200 D.P.R. 398, 412 (P.R. 2018) (explaining that "quantum meruit" means "to each as he so deserves" and that the concept "recognizes the right that everyone has to claim the reasonable value of services they have rendered").[4] As to the cases where Greco and Miñana allegedly collaborated in secret, Quetglas-Jordán has never alleged that he rendered any legal services – instead, the central thrust of his claim is that he was never even aware that those cases existed, since Greco allegedly never told him about the cases. (**ECF No. 22 at 26 ¶¶ 25−26**). Those claims must therefore be dismissed.

As to the series of cases that "produced fees" after the purported resolution of the Partnership, Quetglas-Jordán's purported entitlement to a "50% share distribution" of the fees in question arises from a provision of the Partnership agreement, a contract to which Mr. Greco was not a party. *See, e.g.,* (**ECF No. 22 at 25 ¶ 21**) (alleging that "Atty. Greco [was] well and fully aware that *the Partnership agreement* required QLO PSC and EMP's joint participation in all Puerto Rico Securities actions that they worked with, and the 50% share distribution between them two of any fees that were produced by those actions") (emphasis added); (**ECF No. 22 at 21 ¶ 5 − 22 ¶ 6**) (alleging that, in the formation of the Partnership, Quetglas-Jordán and Miñana agreed that "[t]he contingent or any other fees obtained will be divided equally, i.e. 50% for each of the signatory firms."). To be clear, Quetglas-Jordán has never alleged that Greco was part of the Partnership or formed a partnership of any kind with himself or with Miñana. In a

---

[4]     The quotation reads as follows in the original Spanish: "El precepto legal quantum meruit significa 'tanto como se merece' . . . Esta máxima reconoce el derecho que tiene toda persona a reclamar el valor razonable de los servicios que ha prestado." *Blanco Matos v. Colón Mulero*, 200 D.P.R. 398, 412 (P.R. 2018).

misguided attempt to hold Greco liable for a contractual duty owed to him by a different person, Quetglas-Jordán attempts to argue that the contractual duty of good faith owed by Greco under his contract with the Partnership extends to the enforcement of contractual provisions included in the Partnership agreement. *See, e.g.* (**ECF No. 30 at 9–12**) (arguing that Greco violated his duty of good faith and fair dealing). Quetglas-Jordán provides no support for this novel theory of contract law. Put simply, the fact that Quetglas-Jordán may have a plausible claim against Miñana under the Partnership agreement[5] is not enough to sustain a claim against Greco, who was not a party to that agreement. Moreover, even if Greco was contractually obligated to enforce the terms of the Partnership agreement, Quetglas-Jordán never explains why that would rescue this claim *equitable* relief. *See generally S.L.G. Ortiz-Alvarado v. Great Am.*, 182 D.P.R. 48, 61 (P.R. 2011) (noting that the duty to exercise good faith in the performance of contracts is a legal obligation that sounds in contract law).[6] Accordingly, Defendant's claim for quantum meruit is dismissed.[7]

---

[5]     For example, it is at least conceivable that Quetglas-Jordán could have a claim against Miñana arising under Puerto Rico partnership law. *See, e.g.,* 10 L.P.R.A. § 1372 ("Transactions by partners on their own account forbidden").

[6]     The parties argue at length over whether Quetglas-Jordán may pursue this action for equitable relief, given that an express contractual agreement governed the fee-sharing arrangement between Greco and the Partnership. (**ECF No. 23 at 11**) (arguing that this claim for equitable relief must be dismissed on those grounds); (**ECF No. 30 at 9**) (arguing that the Partnership was dissolved and that the contract with Greco was accordingly rendered void, such that Quetglas-Jordán now may pursue a claim for equitable relief). Ordinarily, quantum meruit relief is available where no express contractual agreement controls. *See Pérez Marrero v. of Dental Surgeons of P.R.,* 131 D.P.R. 545, 558 (P.R. 1992) (describing a claim for quantum meruit relief as follows: "[p]rofessional services, as regards the remuneration therefor, *shall be subject to the agreement of the parties; and where there is no agreement as to remuneration*, and a disagreement should arise respecting the same, the party entitled to such remuneration may sue and recover from the adverse party the reasonable value of such services") (emphasis added). The Court need not resolve this issue, however, as it dismisses the claim on alternative grounds.

[7]     Defendant's remaining claims for setoff, punitive damages, and attorney's fees are not substantive causes of action, but rather a request for various distinct remedies. (**ECF No. 22 at 31–32**). Because each of Defendant's substantive counterclaims have been dismissed, these "claims" are also dismissed.

### IV.    Conclusion

Mr. Quetglas-Jordán has failed to make out a viable claim against Mr. Greco. As to Mr. Quetglas-Jordán's claims for declaratory judgment, those claims are wholly redundant of his affirmative defenses. Mr. Greco's Motion to Strike those claims is therefore **GRANTED**. As to Mr. Quetglas-Jordán's only additional claim for relief, he has attempted to set forth a claim against an individual not party to this litigation. As against Mr. Greco, however, Mr. Quetglas-Jordán has failed to articulate a claim for which relief may be granted. Accordingly, Mr. Greco's Motion to Dismiss is **GRANTED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 4th day of August 2025.

**/s/ María Antongiorgi-Jordán**
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**