**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **W. SCOTT GRECO,**<br>***Plaintiff,***<br>**v.**<br>**ERIC QUETGLAS-JORDAN, *et al.*,**<br>***Defendants.*** | Civ. No. 24-01035 (MAJ) |

## OPINION AND ORDER

### I. Introduction

This case presents a contractual dispute between two attorneys who previously worked as co-counsel pursuant to a split-fee arrangement. Plaintiff W. Scott Greco ("Plaintiff") filed this action against Eric Quetglas-Jordán and Quetglas Law Office P.S.C. (collectively, "Defendant"), alleging that Defendant had wrongfully withheld attorney's fees owed to Plaintiff. (**ECF No. 1**).

On January 27, 2026, Plaintiff filed a Motion and a Supplemental Motion for Summary Judgment. (**ECF No. 94**); (**ECF No. 95**). On February 23, 2026, Defendant opposed the motion, (**ECF No. 110**); (**ECF No. 111**), and filed a cross Motion for Summary Judgment seeking dismissal of Plaintiff's claims, (**ECF No. 97**); (**ECF No. 99**); (**ECF No. 100**).[1] For the reasons set forth below, the Court holds that a genuine

---

[1] Shortly after Plaintiff moved for summary judgment, Defendant cross-moved for summary judgment in three consecutive filings. (**ECF No. 97**); (**ECF No. 99**); (**ECF No. 100**). The first filing is a Statement of Uncontested Material Facts. (**ECF No. 97**). The second filing includes supporting documents related to the facts alleged in the Statement of Uncontested Material Facts. (**ECF No. 99**). The third filing is a brief in support of Defendant's request for summary judgment. (**ECF No. 100**).

The brief filed by Defendant in support of the Motion for Summary Judgment moves the Court to grant judgment in Defendant's favor on six counts of declaratory relief. (**ECF No. 100 at 10–11 § 1, 11–13 § 2, 13–22 § 3, 22–23 § 4, 23 § 5, 23–25 § 6**)). With respect to the first five counts for declaratory relief, each is an affirmative defense to Plaintiff's claims rather than a stand-alone cause of action, as the Court has previously explained at length. *See* (**ECF No. 86 at 4–6**) (granting motion to strike Defendant's

dispute of material fact exists as to each of Plaintiff's claims. Accordingly, the Court finds that summary judgment is not warranted.

## II. Facts[2]

Plaintiff is an attorney based in Virginia. (**ECF No. 95 at 2 ¶ 1**); (**ECF No. 125-1 at 2 ¶ 1**). Defendant is an attorney operating a law firm based in Puerto Rico.[3] (**ECF No. 97 at 3 ¶¶ 4–5**); (**ECF No. 109-1**). Both attorneys specialize in representing investors with claims against financial advisors and brokerage firms in arbitrations before the Financial Industry Regulatory Authority ("FINRA"), a private entity that, among other things, provides an arbitration forum for such disputes. (**ECF No. 95 at 2 ¶ 2**); (**ECF No. 125-1 at 2 ¶ 2**); (**ECF No. 97 at 4–5 ¶¶ 9–12**); (**ECF No. 109-1**).

In 2014, Defendant entered into an agreement with Luis Miñana Feo ("Miñana") and the law firm Espada, Miñana & Pedrosa PSC to provide joint representation and split fees on certain cases. (**ECF No. 97 at 4–5 ¶¶ 8, 11–12**); (**ECF No. 109-1**). Under the agreement, Defendant and Miñana would jointly represent clients in relevant cases and

---

counterclaims because "these claims for declaratory relief are entirely redundant of Mr. Quetglas-Jordán's affirmative defenses and will of necessity be resolved by the Court in the course of adjudicating Mr. Greco's claims"). The Court therefore construes those "claims" for declaratory relief as Defendant's affirmative defenses to Plaintiff's legal and equitable claims. Finally, in the last claim for declaratory judgment set forth in the Motion for Summary Judgment, Defendant requests a "settlement of accounts," arguing that any damages potentially awarded to Plaintiff should be offset by money allegedly owed by Plaintiff to Defendant. (**ECF No. 23–25 § 6**). That claim was previously dismissed, however, for failure to state a claim for which relief may be granted. (**ECF No. 86 at 6–10**). Accordingly, to the extent that Defendant's Motion for Summary Judgment seeks any affirmative relief, the motion is **DENIED**.

The parties have filed numerous responsive briefings to the pending motions before the Court. Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment, (**ECF No. 109**), and Defendant filed an Opposition to Plaintiff's Motion for Summary Judgment, (**ECF No. 110**); (**ECF No. 111**), along with supporting documents. Each party filed Replies to each respective motion, (**ECF No. 119**); (**ECF No. 120**); (**ECF No. 121**), and Defendant filed a Sur-Reply. (**ECF No. 127**).

[2] In making the following findings of fact, the Court applies the standard set forth under Rule 56(c) of the Federal Rules of Civil Procedure and Local Rule 56. *See infra* Sec. III.b.

[3] To be clear, Defendant Eric Quetglas-Jordán is an attorney who is the President and authorized agent of Quetglas Law Office, P.S.C., whereas Defendant Quetglas Law Office, P.S.C., is a corporate firm based in San Juan. (**ECF No. 97 at 3–4 ¶¶ 4–6**). For the sake of simplicity, the Court refers to Eric Quetglas-Jordán and Quetglas Law Office, P.S.C. collectively as "Defendant."

evenly split the fees generated by those cases. (**ECF No. 97 at 5 ¶ 12**); (**ECF No. 109-1**).

In 2015, Plaintiff formed an agreement with Miñana to collaborate on FINRA arbitration cases in Puerto Rico. (**ECF No. 97 at 6 ¶ 19**); (**ECF No. 109-1**). Shortly thereafter, Miñana introduced Plaintiff and Defendant. (**ECF No. 97 at 6 ¶ 20**); (**ECF No. 109-1**). By 2018, Miñana and Defendant together asked Plaintiff to participate as co-counsel in numerous arbitration cases in which Miñana and Defendant were retained as counsel. (**ECF No. 95 at 2–3 ¶¶ 2–3**); (**ECF No. 125-1 at 2–3 ¶¶ 2–3**).

Plaintiff contends that the parties thereby formed a "verbal agreement and contract" according to which "each co-counsel would be paid a one-third percentage of [a] contingent attorney's fee" in prevailing cases. (**ECF No. 95 at 3 ¶ 4**). Defendant disputes that account, denying "that there was a uniform verbal agreement that [Plaintiff] would always receive one-third of the contingent fee in all arbitrations," and instead alleging that the percentage of the contingency fee distributed to Plaintiff "was to be determined on a claim-by-claim basis depending on his contribution, timing, and role." (**ECF No. 125-1 at 3 ¶ 4**).

The parties thereafter collaborated on a series of arbitration cases. The present dispute arises from the attorneys' fees allegedly generated in three of those matters: *Medina de Aguayo et al. v. UBS et al.* ("Aguayo"), (**ECF No. 95 at 12–14**), *Pérez Colón et al. v. UBS et al.* ("Pérez Colón"), (**ECF No. 95 at 14–15**), and *Trinidad-García et al. v. Popular Securities* ("Trinidad"), (**ECF No. 95 at 4–12**).

### i. Aguayo Arbitration

Plaintiff was admitted pro hac vice as co-counsel in the Aguayo arbitration and performed certain tasks in that case. (**ECF No. 95 at 12–13 ¶ 35**); (**ECF No. 125-1 at**

**19 ¶ 35**). The case eventually settled. (**ECF No. 95 at 13 ¶ 37**); (**ECF No. 125-1 at 20 ¶ 37**). The parties dispute the amount of that settlement that was to be paid as a contingency fee,[4] the amount of the contingency fee that was to be paid to Plaintiff,[5] and whether any contingent fee was owed to Plaintiff at all.[6] No portion of the contingency fee resulting from the Aguayo arbitration was distributed to Plaintiff. (**ECF No. 95 at 14 ¶ 40**); (**ECF No. 125-1 at 21 ¶ 40**).

**ii. Pérez Colón Arbitration**

Plaintiff was admitted pro hac vice as co-counsel in the Pérez Colón arbitration. (**ECF No. 95 at 14 ¶ 42**); (**ECF No. 125-1 at 22 ¶ 42**). The case settled. (**ECF No. 95 at 14 ¶ 44**); (**ECF No. 125-1 at 22 ¶ 44**). Plaintiff contends that he was entitled to one-third of the resulting contingency fee, (**ECF No. 95 at 21**), whereas Defendant contends that Plaintiff performed no work on the case and that the parties formed no agreement to split the contingency fee. (**ECF No. 125-1 at 23 ¶ 46**). No portion of the contingency fee resulting from the Pérez Colón arbitration was distributed to Plaintiff. (**ECF No. 95 at 15 ¶ 46**); (**ECF No. 125-1 at 23 ¶ 46**).

**iii. Trinidad Arbitration**

On February 21, 2017, Defendant entered into a retainer agreement with Juan Félix Trinidad-García and Juan Félix Trinidad-Rodríguez (the "Retainer Agreement"). (**ECF No. 97 at 9 ¶ 35**); (**ECF No. 109-1**). At that time, in addition to the pending arbitration proceedings, Trinidad-García and Trinidad-Rodríguez were also facing a debt collection action filed in state court by Banco Popular. (**ECF No. 95 at 4–5 ¶ 11**); (**ECF No. 125-**

4 *See* (**ECF No. 95 at 12 ¶ 32, 14 ¶ 39**); (**ECF No. 125-1 at 17 ¶ 32, 20–21 ¶ 39**).

5 *See* (**ECF No. 95 at 3 ¶ 4**); (**ECF No. 125-1 at 3 ¶ 4, 21 ¶ 40**).

6 *See* (**ECF No. 95 at 3 ¶ 4**); (**ECF No. 125-1 at 21 ¶ 40**).

**1 at 6–7 ¶ 11**). The Retainer Agreement held that Defendant would represent them in both the Trinidad arbitration and in the related state court debt collection action. (**ECF No. 97 at 10 ¶ 37**); (**ECF No. 109-1**). The Retainer Agreement provided that counsel would receive "30% of the total gross recovery" obtained from the arbitration proceedings and that "[t]he total gross recovery will be computed from any positive surplus after any loans are canceled." (**ECF No. 97 at 10–11 ¶ 41**); (**ECF No. 109-1**). The agreement also authorized counsel to contract additional representation but provided that "[t]he fees of any other attorney(s) or Firm(s) joining your representation will not incur additional cost to the client." (**ECF No. 97 at 10 ¶ 40**); (**ECF No. 109-1**). Plaintiff was not a party to the Retainer Agreement. (**ECF No. 97 at 12 ¶ 45**); (**ECF No. 109-1**).

On October 3, 2018, Plaintiff and Defendant entered an agreement joining Plaintiff to the team representing Trinidad-García and Trinidad-Rodríguez ("Trinidad Joint Representation Agreement"). (**ECF No. 97 at 12 ¶ 46**); (**ECF No. 109-1**). The Trinidad Joint Representation Agreement provided that "[t]he compensation . . . [would] be based on all compensation obtained from Tito Trinidad and Felix Trinidad in [the] FINRA case" and that "[Plaintiff] [would] be entitled to 20% of the total contingent attorneys' fees obtained in the FINRA action." (**ECF No. 97 at 12–13 ¶¶ 47–48**); (**ECF No. 109-1 at 4**); (**ECF No. 95 at 4 ¶¶ 10, 12**); (**ECF No. 125-1 at 7 ¶ 12**). The parties dispute whether Plaintiff had access to the Retainer Agreement in which Trinidad-García and Trinidad-Rodríguez retained Defendant, and the parties also dispute whether Plaintiff was aware of any of the terms of the Retainer Agreement. (**ECF No. 97 at 13 ¶¶ 50–52**); (**ECF No. 109-1 at 5–6**). Plaintiff maintains that he is entitled to 20% of a contingent fee calculated based on the total arbitration award, rather than on the amount remaining after Trinidad-García and Trinidad-Rodríguez had settled their debts. (**ECF No. 95 at 17**).

The Trinidad arbitration resulted in an arbitration award in favor of Trinidad-García and Trinidad-Rodríguez. (**ECF No. 95 at 6 ¶ 15**); (**ECF No. 125-1 at 9 ¶ 15**). The arbitration award listed Plaintiff as co-counsel. (**ECF No. 95 at 6 ¶ 15**); (**ECF No. 125-1 at 9 ¶ 15**). The monetary award resulting from the Trinidad arbitration was dispensed into the state court, to settle the debts owed by Trinidad-García and Trinidad-Rodríguez to Banco Popular. (**ECF No. 95 at 6 ¶ 16**); (**ECF No. 125-1 at 9–10 ¶ 16**). Shortly thereafter, Trinidad-García and Trinidad-Rodríguez filed an action against Banco Popular and its subsidiaries in federal court. (**ECF No. 95 at 6–7 ¶ 17**); (**ECF No. 125-1 at 10 ¶ 17**). At some later time, Trinidad-García and Trinidad-Rodríguez reached a global settlement agreement with Banco Popular and its subsidiaries. (**ECF No. 95 at 8 ¶ 19**); (**ECF No. 125-1 at 11 ¶ 19**). The global settlement resolved the state litigation, the federal litigation, and the disbursement of the arbitration award. (**ECF No. 95 at 8 ¶ 19**); (**ECF No. 125-1 at 11 ¶ 19**). The parties dispute whether any contingent attorney fees remained after the repayment of Trinidad-García and Trinidad-Rodríguez's debts to Banco Popular. (**ECF No. 95 at 8–9 ¶¶ 20–24**); (**ECF No. 125-1 at 12–14 ¶¶ 20–24**). Ultimately, Plaintiff received no fees in connection with the work he performed on the Trinidad arbitration. (**ECF No. 95 at 11 ¶ 29**); (**ECF No. 125-1 at 16 ¶¶ 29**).

## III. Legal Standard

### a. Summary Judgment

Summary judgment is appropriate when there is no genuine dispute as to any material fact and only questions of law remain. *White v. Hewlett Packard Enterprise Co.*, 985 F.3d 61, 68 (1st Cir. 2021). "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party[.]" *Flood v. Bank of Am. Corp.*, 780 F.3d 1, 7 (1st Cir. 2015). "A fact is material if it has the potential of affecting the outcome of the case[.]"

*Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021) (internal quotations and citations omitted).

To obtain summary judgment, the moving party must show that "there is an absence of evidence to support" the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "The party moving for summary judgment bears the initial burden of showing that no genuine issue of material fact exists." *Feliciano-Muñoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) (citation omitted). This burden is met "when the moving party demonstrates that the opposing party has failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *E.E.O.C. v. Kohl's Dept. Stores, Inc.*, 774 F.3d 127, 131 (1st Cir. 2014) (internal quotations and citation omitted).

In opposing a motion for summary judgment, the claimant "bears the burden of producing specific facts sufficient to" defeat summary judgment. *González-Cabán v. JR Seafood Inc.*, 48 F.4th 10, 14 (1st Cir. 2022) (internal quotations and citation omitted). The Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003). In addition, the Court will "not engage making credibility determinations or weighing the evidence at the summary judgment stage[.]" *Pina v. Children's Place*, 740 F.3d 785, 802 (1st Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

**b. Findings of Fact**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a party asserting that a fact is "genuinely disputed" must provide support for that the assertion by:

(A) citing to particular parts of materials in the record . . . or

> (B) showing that the materials cited [by the adverse party] do not establish the absence or presence of a genuine dispute, or that [the] adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)–(B). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" and may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e).

The Local Rules for the District of Puerto Rico prescribe a detailed procedure that litigants must observe in order to satisfy the requirements of Rule 56(c) of the Federal Rules of Civil Procedure. Under Local Rule 56, "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts." D.P.R. Loc. Civ. R. 56(c). As to the party contesting a motion for summary judgment, "[u]nless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation[.]" D.P.R. Loc. Civ. R. 56(c).

Local Rule 56(c), also known as the "anti-ferret rule," is "intended to protect the district court from perusing through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto the court." *López-Hernández v. Terumo P.R. LLC*, 64 F.4th 22, 26 (1st Cir. 2023). As the First Circuit has lamented, "violations of this local rule are astoundingly common and constitute an unnecessary burden to the trial court's docket and time." *López-Hernández v. Terumo Puerto Rico LLC*, 64 F.4th 22, 26 (1st Cir. 2023). Yet "compliance with Local Rule 56 is a mandate, not a suggestion." *Ramirez-Rivera v. DeJoy*, 693 F. Supp. 3d 210, 213 (D.P.R. 2023); *see also López-Hernández*, 64 F.4th at 26 ("We have repeatedly emphasized the

importance of complying with said local rule and have implored litigants to comply or ignore it at their peril.") (internal quotations omitted). Accordingly, where a fact set forth by the movant has not been properly controverted, it will be deemed admitted. D.P.R. Loc. Civ. R. 56(e) ("The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment.").[7]

## IV. Analysis

Plaintiff brings claims for breach of contract, conversion, fraud and fraudulent inducement, and breach of fiduciary duty.[8] (**ECF No. 1 at 18–20**). Each of these claims presents a genuine dispute of material fact.

With respect to the Aguayo arbitration, the parties dispute the amount of the settlement that was to be paid as a contingency fee,[9] as well as the amount of the

---

[7] The Court notes that each of the parties have flagrantly violated the requirements of Local Rule 56. Instead of supporting the factual assertions set forth in their respective motions with a specific record citation, the vast majority of factual assertions made by each party—in addition to each of their respective denials or qualifications of the factual allegations of the opposing party—rely on a one-page "declaration" broadly stating, "[a]ccording to my best understanding, recollection and belief[,] all the factual averments stated in the [Statement of Uncontested Material Facts] that refer to this declaration in their support, are true and correct." (**ECF No. 97-3**); *see also* (**ECF No. 94-1**) (asserting that "the facts alleged in his Motion for Summary Judgment and the Complaint . . . are based on [Plaintiff's] personal knowledge, [and] are true and correct to the best of [Plaintiff's] knowledge and belief[.]"). In short, rather than pointing to a specific record citation supporting every factual assertion as required Local Rule 56, the parties attempt an end-around to the clear requirements of Local Rule 56 in order "to avoid the rigors that [the local rule] imposes" by setting forth a circular, self-reinforcing method of proof for their factual allegations. *López-Mendez v. Lexmark Intern., Inc.*, 680 F.Supp.2d 357, 364 (D.P.R. 2010) (explaining that where a party "ignores her responsibility specifically to address each assertion contained in [the opposing party's] statement of material facts, and then launches into her own narrative explanation of the facts in the . . . case[,]" the "district court is justified in issuing an order deeming the moving party's assertions of fact admitted."). The parties engage in this conduct "at their peril." *López-Hernández*, 64 F.4th at 26 (internal quotations omitted). Nevertheless, because each of the parties engages in the same broad violation of Local Rule 56, and in the interest of clarifying the issues in dispute in advance of a possible future trial, rather than simply denying the motions for this violation, the Court proceeds to address in detail the facts at issue between the parties.

[8] The claims for breach of contract, conversion, and breach of fiduciary duty arise from all three arbitration cases in dispute. (**ECF No. 1 at 18 ¶ 57, 19 ¶ 61, 20 ¶ 67**). The claim for fraud and fraudulent inducement arises only from the Trinidad arbitration. (**ECF No. 1 at 19 ¶ 63**). The Court notes that Plaintiff also requests the reimbursement of attorneys' fees in the event that he prevails in this litigation. **(ECF No. 1 at 20–21).**

[9] *See* (**ECF No. 95 at 12 ¶ 32, 14 ¶ 39**); (**ECF No. 125-1 at 17 ¶ 32, 20–21 ¶ 39**).

contingency fee that was to be paid to Plaintiff.[10] Plaintiff contends that he is owed a portion of the contingency fee obtained in connection with the Aguayo arbitration, yet Defendant maintains that Plaintiff's "limited involvement did not justify payment under the[ir] case-by-case arrangement." (**ECF No. 125-1 at 21 ¶ 40**). It is therefore not possible to say as a matter of law whether or not Defendant committed breach of contract or conversion by refusing to distribute any portion of the contingency fee resulting from the Aguayo arbitration to Plaintiff, since the parties dispute whether Defendant promised a portion of the contingency fees resulting from the Aguayo arbitration to Plaintiff in exchange for Plaintiff's work on the case. In addition, it is not possible to determine whether Defendant breached his fiduciary duties to Plaintiff by refusing to distribute contingency fees held in an attorney's trust account to Plaintiff in connection with the Aguayo arbitration, since that claim assumes that a portion of the contingency fees held in the attorney's trust account by Defendant were due to Plaintiff, which is a factual question that is disputed by the parties. The same is true with respect to the Pérez Colón arbitration, where the parties also dispute whether Plaintiff was owed any portion of the contingency fee resulting from that case. (**ECF No. 95 at 21**); (**ECF No. 125-1 at 23 ¶ 46**).

With respect to the Trinidad arbitration, whether or not Plaintiff was aware of the terms of the 2017 agreement in which Trinidad-García and Trinidad-Rodríguez retained Defendant—which defined the scope of contingency fees that would be due to counsel in the event of success at arbitration—is material to determining the amount of contingency fees owed to Plaintiff under the agreement joining Plaintiff to the arbitration. (**ECF No.**

---

10 *See* (**ECF No. 95 at 3 ¶ 4**); (**ECF No. 125-1 at 3 ¶ 4, 21 ¶ 40**).

**97 at 13 ¶¶ 50–52**); (**ECF No. 109-1 at 5–6**). Specifically, a reasonable jury could conclude that Plaintiff was aware of the terms of the underlying retainer agreement signed by Defendant with Trinidad-García and Trinidad-Rodríguez, and that the contingency fee owed to Plaintiff was therefore limited by the terms of that retainer agreement, such that the contract between Plaintiff and Defendant was not breached when Defendant failed to issue Plaintiff his portion of a contingency fee calculated based on the total award issued at arbitration. On the other hand, a reasonable jury could determine that Plaintiff was not aware of the terms of the underlying retainer agreement providing that any contingency fee would be calculated after using the arbitration award to settle any outstanding debts owed by Trinidad-García and Trinidad-Rodríguez to Banco Popular and its subsidiaries, and therefore that Defendant defrauded Plaintiff, breached his contractual obligations, and converted fees owed to Plaintiff by inducing Plaintiff to join the Trinidad arbitration on the mistaken belief that Plaintiff would be entitled to a 20% portion of a contingent fee worth one-third of the total award resulting from the arbitration.[11]

[11] Defendant argues at length that, notwithstanding the material facts in dispute regarding the Trinidad arbitration, Plaintiff cannot recover because the performance of the contract between Plaintiff and Defendant was "impossible." (**ECF No. 100 at 10**). Specifically, Defendant alleges that he sued Miñana prior to the resolution of the Trinidad arbitration, and that the initiation of that lawsuit effectively dissolved the limited partnership previously formed between Defendant and Miñana. On that basis, Defendant argues that "the agreed joint legal business endeavor"—i.e. the agreement between Defendant and Plaintiff regarding the Trinidad arbitration—"came to be impossible" to perform. (**ECF No. 100 at 10**) (citing 31 L.P.R.A. § 9411). This argument is entirely without merit. First, Defendant does not allege that Plaintiff was a party to the limited partnership agreement between Defendant and Miñana, nor does Defendant provide any legal support for the tenuous notion that the dissolution of a partnership agreement would relieve the parties to that agreement of their contractual obligations to third parties. Second, self-induced impossibility is not a defense to an action for breach of contract. *See* 31 L.P.R.A. § 9411 ("The [contractual] obligation is extinguished when, *by a cause not imputable to the [breaching party]* and prior to the event of breach, the performance [of the contract] is made totally and definitively impossible.") ("La obligación se extingue cuando, *por causa no imputable al deudor* y antes de constituirse en mora, la prestación se hace imposible total y definitivamente") (emphasis added). What's more, the undisputed fact that Plaintiff and Defendant continued to collaborate on the Trinidad arbitration and eventually secured a favorable arbitration award for their client itself disproves the notion that performance under the contract was "impossible."

Accordingly, the Court finds that there is a genuine dispute of material fact as to each of Plaintiff's claims. The Court therefore declines to enter summary judgment in either party's favor.

## V. Conclusion

For the foregoing reasons, the Court finds that a genuine dispute of material fact exists as to each of Plaintiff's claims for relief. Accordingly, summary judgment is not warranted. The Court therefore denies each of the pending cross motions for summary judgment. (**ECF No. 94**); (**ECF No. 95**); (**ECF No. 97**); (**ECF No. 99**); (**ECF No. 100**).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of August 2026.

***/s/* María Antongiorgi-Jordán**
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**